PACCAR, INC. AND SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paccar, Inc. v. Commissioner
Docket No. 22221-82.
United States Tax Court
T.C. Memo 1986-421; 1986 Tax Ct. Memo LEXIS 185; 52 T.C.M. (CCH) 404; T.C.M. (RIA) 86421; September 9, 1986. John T. Piper and Joseph A. McIntosh, for the petitioner. Blake W. Ferguson,Michael R. McMahon and Thomas N. Tomashek, for the respondent. SCOTT SUPPLEMENTAL MEMORANDUM OPINION SCOTT, Judge: On November 13, 1985, the opinion in the above-entitled case (85 T.C. 754) was filed stating that decision would be entered under Rule 155. On April 17, 1986, respondent filed his computation for entry of decision and on May 7, 1986, petitioner filed a document entitled "Notice *186 of Absence of Agreement under Rule 155(b)." Submitted with this document were certain computations referred to in the document as "the enclosure." Petitioner in this notice of absence of agreement requested that the Court defer action on the Rule 155 computations for 30 days to permit the parties to consult with respect to their respective computations and notify the Court as to their agreement or non-agreement. On May 16, 1986, the Court entered an order that each party file a memorandum with the Court pointing out the differences in the two computations and presenting arguments in support of the computation that party considered correct. Thereafter the parties filed briefs and reply briefs with respect to the computations. The memoranda filed by the parties disclose that there are three major differences in the computations. One of the differences is with respect to the adjustment required by the holding of the Court that the transfers of surplus and obsolete inventory by petitioner to an unrelated warehouse facility did not constitute a sale by petitioner because of its retention of dominion and control over the materials transferred. In respondent's computation no change *187 was made from the adjustment made in the statutory notice of deficiency with respect to the inventory transfer. Petitioner made a number of adjustments. Petitioner stated in its brief that respondent's initial determination failed to take into account the tax impact of the return of the inventory under petitioner's LIFO inventory method. We assume that by respondent's initial determination petitioner is referring to the determination in the notice of deficiency. Petitioner further stated that the result of bringing the parts inventory stored at SAJAC back into petitioner's LIFO inventory has been to reduce the invasion of low cost LIFO layers, and respondent's initial computation failed to give effect to that result. Respondent, in answer to petitioner's argument and in explanation o the difference in the two computations, states that respondent's computation under Rule 155 disallows the claimed inventory losses in the amounts of $414,591 and $336,483 for the calendar years 1976 and 1977, respectfully, in their entirety as was done in the statutory notice of deficiency. Respondent contends that petitioner's proposed computation with respect to the disallowed losses on the claimed *188 sale of inventory is an untimely attempt by petitioner to introduce a new factual and legal issue into the case. Respondent points out that it is not proper to raise a new issue in a computation under Rule 155. Respondent further points out that for the year 1976 there is only a difference of $5 in his computation and petitioner's computation with respect to the claimed loss to be disallowed with respect to the inventory transferred to SAJAC, and that respondent's result is $5 more favorable to petitioner than petitioner's result. Respondent further points out that for the year 1977 petitioner is claiming that the inventory loss as claimed and disallowed by respondent should be offset by $184,497 because respondent did not take petitioner's LIFO method of accounting into consideration in his adjustment in the notice of deficiency. Respondent contends that petitioner's proposed adjustment to the disallowance of the claimed deduction taken with respect to the transfer of the SAJAC inventory does not come from any document in the Court's record, nor from any part of the Court's opinion, nor from any pleading filed in the case. For these reasons respondent contends that petitioner *189 is raising a new issue which should not be considered by the Court in a hearing on a computation under Rule 155. In response to respondent's statement, petitioner does not point to any evidence in the record before the Court from which its computation may be made. Although petitioner recognizes that a computation under Rule 155 is not an oppoortunity to introduce further evidence, petitioner argues that a revenue agent and auditor in respondent's office checked the figures used by petitioner to its books and found them accurate. The only portion of the record to which petitioner refers as mentioning any possible adjustment under the LIFO method of valuing inventory is certain cross-examination of one of respondent's expert witnesses and certain testimony and an exhibit prepared by one of its witnesses. When respondent's expert witness was asked what consideration she gave to the face that petitioner's inventory was valued on the LIFO method, her response was that she had assumed that LIFO was properly considered in respondent's adjustment and did not consider that an issue in the case. The exhibit introduced into evidence through petitioner's witness was a memorandum prepared *190 by a CPA. The testimony of this CPA witness referred to by petitioner does not discuss the LIFO method of valuing inventory. The memorandum prepared by this witness, under the hearing "Lack of Tax Motivation," states the following: Second, because PACCAR is on LIFO, the LIFO cost of the disposals may be quite low. For example, parts disposed of by Dart to SAJAC in 1977 had costs of $230,800. The costs of $230,800 are before taking LIFO into account. The LIFO cost is only $97,705 for these parts in 1977. The pre-tax value of taking a tax deduction (computed at a 50% combined federal and state rate on $97,705) has a time value for one year (at the average prime rate effective for 1978 (i.e., 10%) of only 2.1% of original cost of the Dart inventory. However, if PACCAR repurchases the parts, as the IRS assumes they will, the repurchase cost will be 90% of the original cost. Therefore, in this instance, it would be 42 years before PACCAR made up in earnings from the time value of money (interest on the tax savings from a premature disposal), the amount it would lose by selling to SAJAC and then repurchasing. * * * Certainly there is no explanation in this paragraph indicating *191 that the loss on sale of parts to SAJAC had not been computed by using the LIFO method of inventory valuation which was the method petitioner had adopted, nor is there an explanation of why any deduction would have been on cost before taking LIFO into account. The memorandum is an opinion of the CPA and does not disclose the source of the figures underlining the computation of the LIFO cost as set forth in the memorandum. Certainly the statement in an opinion exhibit of one of petitioner's witnesses does not rise to the dignity of placing an item in issue. Petitioner recognizes that a new issue may not be properly raised in a Rule 155 computation. Cloes v. Commissioner,79 T.C. 933 (1982). It is petitioner's position that the method used by petitioner to compute the result of disallowing the claimed loss on the sale of SAJAC inventory is not a new issue but merely a matter of computation. We have carefully considered the various cases cited by petitioner which have held certain items to be a matter of computation and not a new issue. In our view those cases are all clearly distinguishable from the instant situation. Here, the effect of petitioner's computation *192 is to allow $184,497 of the claimed loss on sale of inventory to SAJAC. The total claimed loss was $336,483. This loss was claimed by petitioner as a deduction on its return and was disallowed by respondent in the notice of deficiency as an improper deduction. In the petition, petitioner assigns error to respondent's disallowance of the loss of $336,483 to SAJAC but does not make an alternative claim that any LIFO adjustment is necessary to in effect allow a part of the loss if respondent is correct in his determination that there was no bona fide sale of the inventory. Petitioner arrives at the result of in effect allowing part of the claimed inventory loss by reducing the claimed loss which was disallowed by respondent by an offset of $184,497. Since $336,483 was the amount disallowed in the notice of deficiency and the entire issue was decided for respondent, any offset to the $336,483 appears to raise a new issue. In the instant case petitioner assumes without any basis in the record that respondent did not in the notice of deficiency use in his adjustment the proper LIFO inventory method. Respondent's disallowance was of the deductions claimed by petitioner on its returns. *193 Therefore, petitioner apparently assumes, without any reference to the record, that it had not properly computed the claimed deduction on the LIFO basis. When these facts are coupled with the fact that petitioner is unable to point to any document in the record from which the computation it claims is correct may be made, the clear indication is that petitioner's computation raises a new issue. In the Cloes case, we pointed out that where it would be necessary to reopen the record and afford a taxpayer a further trial to enable him to prove an item claimed in a computation under Rule 155, it becomes apparent that the taxpayer is attempting to raise a new issue. Here, clearly, it would be necessary to reopen the record to permit petitioner to put in the necessary portions of its books and records to show the basis of its claimed adjustment to the amount it originally claimed on its return as a loss on the sale of the SAJAC inventory, which was disallowed in full by respondent in the notice of deficiency. On the basis of this record, we conclude that petitioner's attempt to adjust the disallowance of its claimed SAJAC loss improperly raises a new issue in a computation under Rule *194 155. Therefore, we approve respondent's computation of the disallowance of the loss on the sale of inventory to SAJAC. The second item of difference in these two computations is the proper determination of the DISC benefits to petitioner under section 482[1] and section 1.482-2(e)(3), Income Tax Regs.
Petitioner points out that section 994(a) provides for two arithmetic methods of computing DISC benefits and that the one to be used is the one that produces the greater benefits. Petitioner refers to the two methods as "the '4 percent' gross receipts method" and "the '50-50' combined taxable income method." Petitioner refers to section 1.994-1(c)(2) and (3), Income Tax Regs. Petitioner states that in making the computation in the notice of deficiency, respondent did not use the product line groupings method and that its computation corrects the computation as made in the notice of deficiency in this respect. Respondent states that due to the Court's opinion reducing the sales discounts from PACCAR to PACCINT, it has been necessary *195 in the Rule 155 computation to recompute the transfer prices between PACCINT and PACCAR. Respondent states that his computation of the transfer prices from PACCINT to the DISC is on the 50 percent of combined taxable income method provided for in section 994(a)(2). This is the method which petitioner refers to as "the '50-50' combined taxable income method." Respondent states that this method was originally applied by petitioner in filing its tax returns for the years involved and was used by respondent in issuing the statutory notice of deficiency. Respondent states that petitioner's computation separates sales into four distinct product lines and applies to each line either the 50 percent of combined taxable method or the 4 percent of qualified export receipts method. It is respondent's position that petitioner, by using a different method of computing the DISC benefits in its computation under Rule 155 from that used in its returns and in the notice of deficiency, is raising a new issue not presented in the pleadings or at the trial. Respondent further states that the record does not contain information necessary to make the computation which petitioner contends is appropriate *196 in this case. While it is true that the statute provides for the use of the method of computing DISC benefits most advantagous to the taxpayer, when a case has been tried the evidence in the record must be sufficient to support a different form of computation if petitioner is to be entitled to change its method of computation. Petitioner has pointed to nothing in this record to support its computation or which may be used to verify its computation. Therefore, here again it would be necessary to reopen the record to permit introduction of the necessary documentation to support petitioner's computation. For this reason, in our view, petitioner's claim as to the method of computing the DISC benefits made for the first time in its computation under Rule 155 attempts to inject a new issue in the case. Petitioner's argument that the computation of DISC benefiuts is purely a matter of mathematics might be more persuasive if petitioner could point out specific evidence in the record which supported its computation. Inherently a division of sales into distinct product lines carries with it factual determinations which may well be controversial. Petitioner should, as in the case of the *197 SAJAC inventory issue, have alternatively raised this claim in its petition and put in the proper evidence to support a computation in the event its primary position was not sustained. The factual situation with respect to the lack of evidence in the record from which to change the method of computation of DISC benefits is very similar to the lack of evidence in the Cloes case from which to determine whether the taxpayer was entitled to income averaging. That case involved a claim to income averaging provided for in the statute. Here, petitioner claims a method of determining DISC benefits provided for in the statute. In the Cloes case, as in the instant case, the right to use such a method had not been claimed until the filing of the computation under Rule 155. In the Cloes case, as in the present case, the record did not contain the evidence necessary to make the computation first advocated under Rule 155. We accept respondent's computation of petitioner's DISC benefits. Although neither side directly addresses the issue, there is a further difference in the computations of the parties. Petitioner's computation as to tax liability would result in deficiencies *198 in each year in issue based on payments as shown in the notice of deficiency. However, petitioner's computation shows small overpayments due to petitioner for each year in issue. Respondent's computation shows substantial deficiencies for each year. In comparing the computations, it became apparent that the parties are in disagreement as to the proper handling of a payment made by petitioner subsequent to the mailing of the notice of deficiency. To attempt to remedy this difference, the parties on August 7, 1986, filed a post-trial stipulation with the Court in which they agreed that the payment of $3,261,682 received by the Internal Revenue Service on September 27, 1982, from petitioner represents a payment of tax regardless of the fact that it may not have been assessed by the Service Center upon its receipt. This stipulation disposes of part of the issue with respect to the amount of the deficiency due from or overpayment due to petitioner for each of the years here in issue. However, petitioner in its computation allocated this payment among the 3 years involved in this case with the result that petitioner showed a small overpayment for each of the years 1975, 1976 and 1977. *199 Prior to her filing of the stipulation of the amount paid by petitioner in September 1982, respondent had suggested that the Court determine both a deficiency and an overpayment for the year 1975 and permit his computation for 1976 and 1977 to remain unchanged. This would have the effect of allocating the entire 1982 payment to the year 1975, even though it exceeded the deficiency determined by respondent for that year by over $2,500,000. Since the stipulation that the $3,261,682 received by respondent on September 27, 1982, represents a payment of tax has been filed, it would appear to be appropriate that this amount be allocated among the 3 years here involved in accordance with the allocation which was requested by petitioner at the time of the payment. We therefore consider it necessary that the parties prepare another computation under Rule 155. This computation should be in accordance with our conclusions in this opinion that respondent's computation of the tax liability is correct but not his determination of the amounts of the deficiencies. An appropriate distribution of the payment made in 1982 among the years here in issue will permit the parties and the Court to determine *200 the amount of the deficiency due from or overpayment due to petitioner for each of the years here in issue. The Court expects the parties to be able to agree on the computation under Rule 155 in accordance with this opinion. Decision will be entered under the revised computation under Rule 155 to be filed by the parties.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue of 1954, as amended and in effect during the years here in issue.↩